**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| AMY ALLEN | ) | CASE NO.: |
| 92 North Columbus Street | ) | |
| Sunbury, Ohio 43074 | ) | JUDGE |
| | ) | |
| -and- | ) | |
| | ) | **COLLECTIVE ACTION** |
| BROOKE ALLEN | ) | **COMPLAINT FOR VIOLATIONS** |
| 36 Breyer Run Road | ) | **OF THE FAIR LABOR** |
| Apartment 302 | ) | **STANDARDS ACT** |
| Columbus, Ohio 43228 | ) | |
| | ) | |
| | ) | **(Jury Demand Endorsed Herein)** |
| *On behalf of themselves and all* | ) | |
| *others similarly-situated.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHAMROCK TOWING, INC. | ) | |
| c/o Timothy Duffey, Statutory Agent | ) | |
| 6333 Frost Road | ) | |
| Westerville, Ohio, 43082 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| TIMOTHY L. DUFFEY | ) | |
| 2124 Blayney Road | ) | |
| Sunbury, Ohio 43074 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MICHAEL NELSON | ) | |
| c/o Shamrock Towing, Inc. | ) | |
| 6333 Frost Road | ) | |
| Westerville, Ohio 43082 | ) | |
| | ) | |
| Defendants. | ) | |

1

## INTRODUCTION.

1.  Through company-wide practices in which Defendants Shamrock Towing, Inc. ("Shamrock"), Timothy L. Duffey ("Duffey"), and Michael Nelson ("Nelson") (collectively, "Defendants") paid Plaintiffs Amy Allen ("Amy") and Brooke Allen ("Brooke") (collectively "Plaintiffs") and those similarly situated a flat rate in cash for all hours worked over 40 in a given week Defendants willfully and systematically denied Plaintiffs and other similarly situated employees the overtime pay they were entitled to. Accordingly, Defendants' conduct violated the Fair Labor Standards Act ("FLSA"), 29 U.S. Code § 207. On behalf of themselves and all other similarly situated employees, Plaintiffs Amy Allen brings this collective action for the recovery of unpaid overtime wages under the FLSA, 29 U.S.C. § 216(b). Members of the collective action are referred to as the "**FLSA Collective Class Members.**"

## PARTIES.

2.  Amy Allen ("Amy") is an individual residing in Delaware County, Ohio. Allen performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA.

3.  Brooke Allen ("Brooke") is an individual residing in Franklin County, Ohio. Allen performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA.

4.  The FLSA Collective Class Members are all current and former employees who were paid on an hourly basis; who worked for Defendants for any period of time during the three-year

2

period immediately preceding the filing of this Complaint to the present; and who were not paid overtime despite working more than 40 hours per week.

5.  Shamrock is a for-profit corporation organized under the laws of the State of Ohio, which maintains its headquarters in Westerville, Ohio, and which operates in Ohio and other states.

6.  At all times referenced herein, Duffey was the president, co-owner, and/or principal of Shamrock.

7.  At all times referenced herein, Nelson was the co-owner and/or principal of Shamrock.

## PERSONAL JURISDICTION.

8.  Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

9.  Plaintiffs and those similarly-situated performed work in this judicial district, were paid unlawfully by Defendants pursuant to work performed in this district and/or were hired out of this district.

10. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE.

11. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

12. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

**<u>FLSA COVERAGE.</u>**

13.   At all times referenced herein, Shamrock was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

14.   At all times referenced herein, Duffey supervised and/or controlled the employment of Plaintiffs and those similarly-situated with Shamrock, controlled the day-to-day operations of Shamrock, to include controlling its compensation policies and practices, and acted directly or indirectly in the interest of Shamrock in relation to its employees, and was an employer within the meaning of section 3(d) of the FLSA.

15.   At all times referenced herein, Nelson supervised and/or controlled the employment of Plaintiffs and those similarly-situated with Shamrock, controlled the day-to-day operations of Shamrock, to include controlling its compensation policies and practices, and acted directly or indirectly in the interest of Shamrock in relation to its employees, and was an employer within the meaning of section 3(d) of the FLSA.

**<u>FACTUAL ALLEGATIONS.</u>**
**<u>(Background Facts).</u>**

16.   At all times the applicable statutory period, Defendants operated a towing business that included local towing, flatbed towing, long distance towing, out of state towing, commercial towing, junk car towing, and motorcycle towing.

4

17. At all times referenced herein, Defendants maintained a scheme in which they avoided paying their hourly, non-exempt employees overtime by paying them a flat hourly rate for the non-overtime hours they worked via a payroll check and in cash for the overtime hours they worked ("Overtime Scheme").

18. Defendants' failure to pay overtime was not a good faith mistake or based on an innocent misunderstanding of the FLSA; it was a willful, intentional method of keeping overtime hours worked "off the books" in order to avoid paying overtime.

19. Defendants' act of paying overtime hours "under the table" in cash and not recording that pay on employee's paystubs reflects Defendants' knowledge that it was unlawful to deny overtime pay to employees who worked over 40 hours a week.

20. Upon information and belief, Nelson and Duffey came up with Overtime Scheme and directly oversaw its implementation at Shamrock.

### (Facts Regarding Amy Allen's Employment with Defendants).

21. Amy is a former employee of Defendants.

22. On or about July 7, 2016, Amy was hired by Defendants to work as Dispatcher.

23. Amy was paid on an hourly basis.

24. During her employment with Defendant, Amy regularly worked in excess of 40 hours per week.

25. At all times referenced herein, Defendants regularly split the hours Amy reported between a payroll check and cash "under the table."

26. Defendants did not pay Amy overtime when she worked more than 40 hours in a week.

27. For example, during the pay period covering the time period between June 11, 2019 through June 24, 2019, Amy worked a total 86.18 hours.

5

28. Rather than paying Amy for 80 hours of regular pay and 6.18 hours of overtime, Defendants paid Amy a flat rate hourly rate for all hours worked:



29. Several examples of pay stubs splitting hour between a payroll check and cash, and not paying overtime, are attached hereto as Exhibits 1-11.

30. After a period of time, Defendants clarified the Overtime Scheme into a policy that any hours worked over 65 in a pay period would be paid in cash.

6

31. On one or more occasions, Amy asked Duffey why she was paid with cash rather than being paid overtime ("Overtime Complaint").

32. Duffey responded to Amy's Overtime Complaint by assuring her that "it's better this way" because Amy would keep more money by not being taxed on what she received in cash.

33. On or about December 13, 2021, Amy sent a text message to Office Manager Kaleigh Sanfillipo, ("Sanfillipo") stating that during her employment with Defendants, Amy always received holiday pay in cash rather than a payroll check ("Text Complaint")

34. In response to Text Complaint, Sanfillipo not only confirmed that all holiday pay was paid in cash, but also that Defendants paid their employees in cash for time over 65 hours "no matter what doesn't matter holiday or not."



35.    On or about December 14, 2021, Amy's employment with Defendants ended.

### (Facts Regarding Brooke Allen's Employment With Defendants).

36.    On or about September 16, 2019, Brooke was hired by Defendants to work as Dispatcher.

37.    Brooke was paid on an hourly basis.

38.    During her employment with Defendant, Brooke regularly worked in excess of 40 hours per week.

39.    At all times referenced herein, Defendants regularly split the hours Brooke reported between a payroll check and cash "under the table."

40.    Defendants did not pay Brooke overtime when she worked more than 40 hours in a week.

41.    Rather than paying Brooke for 80 hours of regular pay and time and a half for overtime pay, Defendants paid Brooke a flat rate hourly rate for all hours worked

42.    On or about September 23, 2019, during Brooke's first week working for Defendants, Sanfillipo outlined how Defendants would pay Brooke partially in cash for any overtime or holiday pay. On or about September 27, 2019, Brooke received her first payment from Defendants entirely in cash instead of receiving a payroll check.

43.    Subsequently, Brooke was paid for some of her hours worked in the form of a payroll check, and the remainder of the hours she worked in cash, to include overtime hours.

44.    Subsequently, Defendants failed to pay Brooke overtime pay for hours she worked over 40 in a given week.

45.    On or around October 1, 2020, Brooke's employment with Defendants ended.

### FLSA COLLECTIVE ACTION ALLEGATIONS.

46.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs.

47. The Overtime Scheme was not just limited to Plaintiffs; the Overtime Scheme was and is a companywide scheme effecting all hourly, non-exempt current and former employees of Shamrock.

48. The Overtime Scheme was maintained by Defendants at all times during the three-year period immediately preceding the filing of this Complaint.

49. Based on the foregoing, Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf and all similarly-situated individuals who are part of the following class:

> All persons who were employed by Shamrock Towing, Inc. for any period of time during the three years immediately preceding the filing of this Complaint and who were paid on an hourly basis, excluding those who regularly operated trucks that weighed greater than 10,000 pounds.

50. Collective Action treatment of Plaintiffs' claim for unpaid overtime is appropriate because Amy, Brooke, and the FLSA Collective Class Members were and continue to be subjected to the same Overtime Scheme referenced above, and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether Defendants' company-wide practices failed to properly compensate the FLSA Collective Class Members for all hours worked.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.

51. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

52. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

53. Plaintiffs and those similarly-situated were not exempt from the right to receive overtime pay under the FLSA during their employment with Defendants.

54. Plaintiffs and those similarly-situated are entitled to be paid overtime compensation for all overtime hours worked.

55. At all times relevant to this Complaint, Defendants had a policy and practice of failing to pay overtime to its hourly employees through an overt scheme in which employees were paid cash for all overtime hours worked.

56. Defendants' practices were not accidental or based on a good-faith interpretation or understanding of the FLSA; Defendants deliberately concocted a scheme to deprive Plaintiffs and those similarly-situated of the overtime pay they earned.

57. Upon information and belief, Defendants never received any legal advice from an attorney or law firm that the practices complained of in this Complaint were lawful.

58. The practices complained of in this Complaint were never audited or approved of by the Department of Labor.

59. Defendants did not rely on any Department of Labor regulations or opinion letters to devise or create their overtime policies and/or practices.

60. Defendants' failure and refusal to pay Plaintiffs and those similarly-situated the proper overtime wage for all overtime hours worked was willful, intentional, and not in good faith.

61. Plaintiffs and those similarly situated are entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Amy Allen and Brooke Allen respectfully request relief against

Defendants, joint and severally, as set forth below:

a. Designating this action as a collective action on behalf of Plaintiff and the Collectives she represents pursuant to the Fair Labor Standards Act, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

b. Designating Plaintiffs Amy Allen and Brooke Allen as representatives for the FLSA Collective Class Members;

c. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*;

d. Awarding Plaintiffs and those similarly situated all unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

e. Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, noneconomic, and consequential to Plaintiffs and those similarly situated in an amount to be determined at trial;

f. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

g. Awarding pre-judgment and post-judgment interest as provided by law;

h. Awarding reasonable attorneys' fees and costs; and

i. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiffs*

## **JURY DEMAND**

Plaintiffs Amy Allen and Brooke Allen demand a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

**EXHIBIT 1**



**EXHIBIT 2**



EXHIBIT 3



**EXHIBIT 4**



**EXHIBIT 5**



**EXHIBIT 6**



**EXHIBIT 7**



**EXHIBIT 8**



**EXHIBIT 9**



**EXHIBIT 10**



**EXHIBIT 11**

