IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMY ALLEN, *et al.*, | : |
| | : Case No. 2:22-cv-1948 |
| **Plaintiffs,** | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : MAGISTRATE JUDGE JOLSON |
| SHAMROCK TOWING, INC., *et al.*, | : |
| | : |
| **Defendants.** | : |

**ORDER APPROVING SETTLEMENT**

This matter is before the Court on the parties' Joint Motion for Settlement Approval and Dismissal with Prejudice. (ECF No. 18). For the following reasons, the Court **GRANTS with modifications** the Joint Motion for Settlement Approval. This Court will retain jurisdiction over the settlement agreement.

I. **BACKGROUND**

According to Plaintiffs' Complaint, Plaintiffs Amy Allen and Brooke Allen were employed by Defendant Shamrock Towing, Inc. (ECF No. 1 ¶ 1). Defendant Shamrock is a towing business operating in Ohio. (*Id*. ¶¶ 5, 16). At all relevant times, Defendant Timothy Duffey was the "president, co-owner, and/or principal of Shamrock," and Defendant Michael Nelson was "the co-owner and/or principal of Shamrock." (*Id*. ¶¶ 6–7).

Plaintiffs allege that they were paid a flat rate in cash for all hours worked over forty instead of the overtime pay to which they were entitled. (*Id*. ¶ 1). Plaintiffs allege that their experience is part of Defendants' contemporaneous scheme (the "Overtime Scheme") in which "[Defendants] avoided paying their hourly, non-exempt employees overtime by paying them a flat hourly rate for the non-overtime hours they worked via a payroll check and in cash for the overtime hours they

1

worked." (*Id.* ¶ 17).

Amy Allen worked as a dispatcher for Defendants from July 7, 2016, until approximately December 14, 2021. (*Id.* ¶¶ 22, 35). Brooke Allen worked as a dispatcher for Defendants from September 16, 2019, until approximately October 1, 2020. (*Id.* ¶¶ 36, 45). Plaintiffs contend that they worked regularly in excess of forty hours per week but that they were not paid at least one and one-half their regular rate for their overtime hours. (*Id.* ¶¶ 23–26, 38–40). Plaintiffs allege that Defendants' failure to compensate them for overtime hours was knowing and deliberate. (*Id.* ¶ 56). Plaintiffs allege that all hourly, non-exempt current and former employees of Defendant were subjected to the Overtime Scheme on a companywide basis. (*Id.* ¶ 47).

Plaintiffs filed their Complaint against Defendants on April 12, 2022, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (ECF No. 1). The Complaint sought relief on behalf of Plaintiffs and a class of other similarly situated individuals, pursuant to 29 U.S.C. § 216(b). (*Id.* ¶ 1).

On May 11, 2022, Defendants filed an answer generally denying the allegations set forth in the Complaint. (ECF No. 11). On November 14, 2022, the parties filed a Joint Motion for Settlement Approval. (ECF No. 18). The proposed settlement would resolve fully all claims which presently exist or may exist in the future between the parties related to Plaintiffs' employment with Shamrock. (ECF No. 18 at 1). Under the agreement, Shamrock would pay Amy Allen a gross sum of $8,000.00, and her counsel would receive $6,434.38 for attorneys' fees. (ECF No. 18-1 at 1–2). Shamrock would pay Brooke Allen a gross sum of $3,500.00, and her counsel would receive $6,434.37 for attorneys' fees. (*Id.* at 8–9).

The Court has reviewed the parties' Joint Motion and Settlement Agreement and approves the proposed settlement for the following reasons.

2

## II. LAW AND ANALYSIS

As this Court has previously noted, "FLSA cases require court approval, even where only one litigant's rights are implicated." *Camp v. Marquee Constr., Inc.*, No. 2:18-CV-831, 2020 WL 59517, at *1 (S.D. Ohio Jan. 6, 2020) (Marbley, J.). The Court shall approve an FLSA settlement if there exists a bona fide dispute under the FLSA that can be resolved by a settlement agreement, the agreement was reached through an arms-length negotiation, and the agreement is fair, reasonable, and adequate. *Kritzer v. Safelite Solutions*, LLC, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381–82 (S.D. Ohio 2006)).

This Court finds that the proposed settlement agreement resolves a bona fide dispute under FLSA. Plaintiffs allege that Defendants violated FLSA by failing to pay proper overtime wages. (ECF No. 1 ¶ 1). Specifically, Plaintiffs allege that Defendants "willfully and systematically" denied them and similarly situated employees overtime wages, instead paying them for overtime hours at a flat rate in unrecorded cash payments to avoid producing records of the underpayment. (*Id*. ¶¶ 1, 17–19). Plaintiffs alleged that this scheme was companywide, impacting all hourly, non-exempt current and former employees of Shamrock. (*Id*. ¶ 47). The parties' dispute concerns whether Defendants' payment scheme failed to properly compensate their employees for all hours worked. (*Id*. ¶ 50; ECF No. 11 at 6). Defendants denied the material allegations of Plaintiffs' claims. (ECF No. 11). Defendants also raised several defenses, including that Plaintiffs' claims were time-barred; that Plaintiffs could not state a *prima facie* case that Defendants violated FLSA; and that Plaintiffs were employed in capacities that exempted them from FLSA. (*Id*. at 5–6). The parties have genuine disputes as to the sufficiency of Plaintiffs' allegations. At any rate, allegations of underpayment for overtime hours worked raise a bona fide dispute under the FLSA, and the

proposed settlement agreement resolves them. *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *4 (S.D. Ohio Sept. 9, 2016) (Marbley, J.). Defendants continue to deny any wrongdoing in the proposed settlement agreement. (ECF No. 18-1 at 11). There is no indication that the parties were "merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). As discussed below, the Court also finds that the proposed settlement agreement was reached as the result of arms-length negotiation.

### A. Fairness, Reasonableness, and Adequacy of Settlement

To determine whether a settlement is "fair, reasonable, and adequate," this Court balances the following factors: "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement." *Padilla v. Pelayo*, No. 3:14-cv-305, 2015 WL 4638618, at *1 (S.D. Ohio Aug. 4, 2015) (citing *Int'l Union, United Auto., Aerospace, and Agric. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2006)). The balance of these factors weighs in favor of approving the proposed settlement agreement.

### 1. Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion in settlement negotiations in instances where no evidence to the contrary is offered. *In re Telectronics Pacing Systems Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001). The parties agreed that Plaintiffs would make a settlement demand following their receipt of "all time and pay records for Plaintiffs and opt-in Plaintiffs," to which Defendants would provide their response. (ECF No. 12 at 3–4). The proposed settlement agreement indeed follows the parties' exchange of initial disclosures, which comprised the payroll records central to Plaintiffs' FLSA claims. (ECF Nos. 13, 14-1). The proposed settlement further reflects real concessions from both sides. *In re Telectronics*, 137 F. Supp. 2d at 1016. Defendants

4

agreed to pay Plaintiffs a combined sum of $11,500.00 and an additional $12,868.75 to their counsel in exchange for Plaintiffs' agreement to release all their claims against Defendants. (ECF No. 18-1 at 1–2, 8–9).

This Court thus finds that the negotiations were conducted at arm's length and there is no reason to believe the settlement involves collusion.

### 2. Complexity, Expense, and Likely Duration of Litigation

The parties submit that there is a bona fide dispute as to Defendants' FLSA liability comprising the following considerations: whether Plaintiffs were exempt from overtime requirements, the number of hours Plaintiffs worked, and the proper computation of any wages owed to Plaintiffs. (ECF No. 18 at 2). Plaintiffs' Complaint ventured to hold Defendants Duffey and Nelson individually liable for the alleged FLSA violations in addition to the liability allegedly incurred by Defendant Shamrock. (ECF No. 1). This wage dispute involves a potential FLSA collective, multiple Defendants, and requests from Plaintiffs for a declaratory judgment and an injunction (in addition to damages). Both sides would incur significant expense and risk litigating this matter absent settlement. As the district court found in *In re Telectronics*, "settlement avoids the costs, delays, and multitude of other problems associated" with complex litigation. *In re Telectronics*, 137 F. Supp. 2d at 1013 (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This Court finds that the complexity, expense, and likely lengthy duration of the continued litigation of Plaintiffs' FLSA claims favor approval of the proposed settlement agreement.

### 3. The Stage of the Proceedings

Courts must also assess the progression of litigation to ensure that a plaintiff has adequate information to assess her case and the desirability of a settlement agreement. *Macaluso v. Zirtual*

5

*Startups, LLC*, No. 2:19-CV-3616, 2021 WL 3639665, at *3 (S.D. Ohio Aug. 17, 2021) (Marbley, J.). Plaintiffs filed their Complaint on April 12, 2022. (ECF No. 11). On May 27, 2022, the parties produced a report (the "Rule 26(f) Report") following a meeting held pursuant to Federal Rule of Civil Procedure 26(f) to set various discovery-related dates. (ECF No. 12). In the Rule 26(f) Report, both parties agreed to exchange initial disclosures by June 10, 2022, and Plaintiffs agreed to "make a settlement demand within 30 days after receiving all time and pay records for Plaintiffs and any opt-in Plaintiffs." (*Id*. at 3–4). These agreements were entered into effect by the Magistrate Judge's scheduling order issued on June 2, 2022. (ECF No. 13). The scheduling order also vacated the preliminary pretrial conference set for June 7, 2022, having noted that "[t]he parties agree to make a good faith effort to settle this case." (*Id*. at 2). On June 10, 2022, Defendants filed a copy of their initial disclosures, which included 385 pages of payroll records for Plaintiffs and other employees. (ECF No. 14-1). Five months later, on November 14, 2022, the parties filed their proposed settlement agreement. (ECF No. 18).

While the parties have not engaged in significant discovery, Defendants did provide the payroll records enabling Plaintiffs to determine their initial settlement demand. This information was seemingly sufficient for Plaintiffs to assess the strengths and weaknesses of their claims. Plaintiffs' counsel has also litigated over 100 cases relating to the recovery of unpaid wages, including "several" that proceeded as collective actions under §216(b) of the FLSA. (ECF No. 18-2 ¶¶ 1, 6). Thus, while the parties have not engaged in extensive discovery, this Court finds that the experience of Plaintiffs' counsel in this sphere of litigation and the exchange of documents allowed Plaintiffs to make an informed decision about the adequacy of the proposed settlement agreement.

Accordingly, this Court finds that the stage of the proceedings and the discovery completed

support a finding that the proposed settlement is fair, reasonable, and adequate.

### 4. Likelihood of Success on the Merits

It is not clear that Plaintiffs would have lost on their FLSA claims if this case proceeded to trial. Plaintiffs alleged that Defendants failed to compensate them for their overtime hours and submitted that Defendants maintained a policy of failing to pay overtime to other similarly situated employees. (ECF No. 1 ¶¶ 1, 46–50). Defendants disputed liability and argued that Plaintiffs' FLSA claims were time-barred; that Defendants acted in good faith and reasonably believed that they were complying with FLSA; and that each Plaintiff's dispatcher position performed bona fide executive or administrative functions such that she was exempt from FLSA. (ECF No. 11 at 6). Defendants also disputed the number of hours which Plaintiffs claim to have worked. (ECF No. 18 at 2). Resolution of Plaintiff's claims would be very fact-intensive, as the parties disputed the following: Plaintiffs' FLSA exemption status; whether Defendants intentionally violated FLSA; and the accuracy of Plaintiffs' overtime claims. This Court notes that any likelihood of success on the merits by Plaintiff would require substantial motions practice and a jury trial, and both the potential risks and expenses of continued litigation are likely outweighed by the benefits of the proposed settlement.

### 5. The Public Interest

As the district court noted in *Kritzer*, "[t]here is a strong federal policy encouraging settlement." 2012 WL 1945144, at *6. Settlement of this matter without further motions practice and a jury trial reduces strain on this Court and its docket. *See In re Telectronics*, 137 F. Supp. 2d at 1025 (finding the public interest satisfied where burden on "valuable judicial resources" was alleviated by settlement). This Court thus finds that settlement is in the public interest because it "ends potentially long and protracted litigation." *Id.* (citing *In re Broadwing*, 252 F.R.D. at 369).

## B. Attorneys' Fees

The parties also intend the proposed settlement to constitute full satisfaction of Plaintiffs' claims for attorneys' fees and costs. The proposed settlement contains a commitment from Defendant Shamrock to pay to the Spitz Law Firm the following sums: $6,434.38 on behalf of Plaintiff Amy Allen, and $6,434.37 on behalf of Plaintiff Brooke Allen. Although the attorneys' fees to be paid on each Plaintiff's behalf are nearly identical, Amy Allen will be paid a gross sum of $8,000.00 while Brooke Allen will receive a gross sum of only $3,500.00. In total, the two settlement agreements provide for $12,868.75 in attorneys' fees and costs for Plaintiffs' counsel and $11,500.00 for Plaintiffs themselves, for an overall payment amount of $24,368.75.

In his declaration, Attorney Christopher Wido attests that he spent 34 hours and 19 minutes representing Plaintiffs in this matter, for which he billed $375.00 per hour. (ECF No. 18-2 ¶¶ 16, 19). Attorney Wido represents that this rate is consistent with "the Ohio State Bar Associations 2019 *Economics of Law Practice in Ohio* and on past fee awards" and is reasonable for attorneys with similar qualifications and experience. (*Id.* ¶ 19). Further, Attorney Wido reasons, the $375.00 hourly rate is far below the $550.00 hourly rate to which he contracted with Plaintiffs in the event that this case settled short of trial. (*Id*. ¶¶ 19, 23). Attorney Wido states that he spent the hours that he billed in this matter doing the following: "researching Plaintiffs claims and Defendants' businesses and business structure; reviewing Plaintiffs' documents, pay stubs, emails, and other records, drafting the complaint; reviewing Defendants production of time and pay records; calculating damages; obtaining settlement authority from each Plaintiff; and negotiating a settlement." (*Id*. ¶ 16).

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to

8

attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund-method, courts in this Circuit generally approve of awards that are one-third of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2020). The lodestar represents the number of hours spent by counsel, multiplied by reasonable rates. *See Reed*, 179 F.3d at 471. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Van Horn*, 436 F. App'x at 498. The party seeking attorneys' fees bears the burden of documenting entitlement to an award. *Reed*, 179 F.3d at 472.

A district court also analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

Plaintiffs' counsel's lodestar for this case is $12,868.75, which includes 34 hours and 19 minutes of work performed by Attorney Wido at a rate of $375.00 per hour. In most cases, the quality of representation is "reflected in the reasonable hourly rate." *Borders v. Alternate Sol.*

*Health Network, LLC*, No. 2:20-CV-1273, 2021 WL 4868512, at *5 (S.D. Ohio May 17, 2021) (Marbley, J.). In this case, however, the proposed settlement agreement would afford Plaintiffs' counsel a sum representing over half of Plaintiffs' total recovery. Considering the *Ramey* factors, the record does not support a finding that the requested attorneys' fees are reasonable here.

As mentioned above, courts in this district have two choices when reviewing settlement agreements under FLSA: the lodestar method and the percentage-of-the-fund method. *Francis v. Supreme Touch Home Health Servs. Corp.*, No. 2:19-CV-05019, 2021 WL 4244179, at *3 (S.D. Ohio Apr. 13, 2021) (Marbley, J.). Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects FLSA's employee-protection objective. Given that courts in this Circuit generally approve of awards amounting to one-third of the total settlement, *see, e.g., Rotuna*, 2010 WL 2490989, at *8, this Court determines that Plaintiffs' counsel is entitled to one-third of the total settlement in this matter. In reaching this conclusion, this Court does not question the time and labor counsel expended in handling this matter. Rather, this Court's finding that an attorneys' fees award of $12,868.75 is not warranted is based on the inherent nature of FLSA settlements, which tend to provide significant compensation to counsel rather than to the injured.

Accordingly, Plaintiffs' counsel will receive one-third of the $24,368.75 settlement fund, $8,122.92, and Plaintiffs will share the remainder, $16,245.83. Specifically, Plaintiffs' counsel will receive $4,061.46 per Plaintiff; Plaintiff Amy Allen will receive $11,302.22 (69.57% of Plaintiffs' recovery amount); and Plaintiff Brooke Allen will receive $4,943.61 (30.43% of Plaintiffs' recovery amount).[1]

---

[1] Out of the original $11,500.00 sum to be paid to Plaintiffs under the Settlement Agreement, Plaintiff Amy Allen was to receive $8,000.00 (69.57%) and Plaintiff Brooke Allen was to receive $3,500.00 (30.43%). (ECF No. 18-1 at 1–2, 8–9). This Court here updates the amount of recovery to be received by each Plaintiff in accordance with the percentages established under the Settlement Agreement.

### III. CONCLUSION

For the reasons stated above, this Court **GRANTS with modifications** the parties' Joint Motion for Settlement Approval and orders that this case be **DISMISSED WITH PREJUDICE**. (ECF No. 18). The settlement funds will be transmitted to Plaintiffs and their counsel as outlined in the Settlement Agreement. (ECF No. 18-1).

This Court will retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 29, 2023**